**L. C. WAKER, etc., et al., Plaintiffs,**

**James L. Allen, Joseph Faulkner, and Isaiah Hayes, III, et al., Plaintiffs-Appellants,**

v.

**REPUBLIC STEEL CORP., et al., Defendants,**

**United Steel Workers of America Local No. 2176, et al., Defendants-Appellees.**

No. 80–7139.

United States Court of Appeals, Fifth Circuit.*
Unit B

May 3, 1982.

Adams & Clemon, Oscar W. Adams, Birmingham, Ala., Judith Reed, New York City, Barry L. Goldstein, Washington, D. C., for plaintiffs-appellants.

Cooper, Mitch & Crawford, Jerome A. Cooper, Birmingham, Ala., Michael H. Gottesman, Washington, D. C., Bernard Kleiman, Gen. Counsel, Chicago, Ill., for defendants-appellees.

Before GODBOLD, Chief Judge, TJOFLAT and THOMAS A. CLARK, Circuit Judges.

PER CURIAM:

Plaintiffs below seek reversal of a district court judgment in favor of defendants. The district court held that a seniority sys-

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

tem maintained by Republic Steel was bona fide and thus shielded by the immunity provided under 42 U.S.C. § 2000e–2(h). The court held alternately that the international and local unions, the former on summary judgment, were not liable for the maintenance of the seniority system. We agree and thus do not address the bona fides of the seniority system.

*Ten Years of Litigation*

In lawsuits filed in 1971 and 1972, the company, the local union, and the international union were charged with a broad range of allegedly discriminatory practices violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

In February 1974, the district court issued a preliminary injunction directed primarily at the seniority system. Plant-wide seniority was established thereby which, coupled with a provision for earnings retention or "red circling" upon transfer, sought to alleviate the effect which the seniority system had upon blacks who had earlier been assigned positions in a racially discriminatory manner.

Later in 1974, the injunction was amended as a result of a consent decree involving governmental claims of employment discrimination in the steel industry. *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). These changes were incorporated by reference into the 1974 labor contract as part of the collective bargaining process.

Eventually, the union defendants moved for summary judgment on the claims that remained. Of these, only the seniority system claim entailed potential liability for the unions. As to the culpability of the local union with respect to the system, the district court found summary judgment was inappropriate. The court concluded, however, that to whatever extent the seniority system might be found to be lacking in bona fides or to be the result of an intention to discriminate, the international union would not be responsible. The district court found that "the well-documented role

of the United Steelworkers as an active and persistent protagonist for expanded employment opportunities for black employees, including repeated support for broadening of seniority rights to overcome the effects of past discrimination by employers, makes clear beyond peradventure" that the International did not intend that the seniority system perpetuate the effects of past employer racial discrimination at Republic's Gadsden plant. The court, therefore, granted summary judgment in favor of the international union with respect to any monetary liability to the plaintiffs.

At trial, the plaintiffs presented evidence for eight days after which the case was recessed because of docket conflicts. On October 8, 1979, the plaintiffs and the company reached a settlement. The terms of the settlement were found to be reasonable and a hearing was scheduled for consideration of the views of the class members. The district court determined, with the concurrence of counsel, that the presentation of evidence by the local union would not be delayed pending a hearing on the proposed settlement. After a short deliberation, the local union decided that it would submit the case upon the evidence received during the plaintiffs' presentation. In extensive analysis, the trial court found that the seniority system was bona fide under 42 U.S.C. § 2000e–2(h) and *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Noting that this conclusion was not "wholly free from doubt," the court went on to find the local without culpability, saying the following in part:

The features of the seniority system in effect during the 1965–74 period which operated to perpetuate the consequences of earlier discrimination by the company were basically three in number: the use of three separate pools until 1968; the use of occupational and LOP age after entry into a new LOP; and the failure to provide any "earnings retention" for those desiring to change LOPs. It appears, however, from the testimony of members of the plaintiff class, such as

Isaiah Hayes, and from the testimony of the white president of the local at the time of the 1963 local negotiations, that the local union pressed the company at that time for a single pool and for use of plant-age. It seems obvious, moreover, that the union would hardly have opposed provisions for earnings retention.

The support of the union, not only nationally but locally, for these curative changes—taken in conjunction with the rather unique posture taken by the union towards blacks during periods of persvasive [sic] segregation elsewhere—make it inappropriate to hold the union legally responsible for the discrimination—perpetuating aspects of the seniority system. Some credit is due to be given to the Steelworkers for their continuing role in the expansion of employment opportunities for black workers, and that credit is here given by ruling them not liable with respect to the seniority system in the event that system were held to be outside the ambit of 42 U.S.C.A. § 2000e–2(h). In short, the court would hold the company solely responsible for the consequences of that system if it were not protected under § 2000e–2(h).

*Liability for Seniority Systems*

The district judge found that the plaintiffs had established a practice of discriminatory assignments by the company prior to 1963 and that the 1965–74 seniority system perpetuated the effects of this pre-Act discrimination. Because we find that the unions in this case cannot be held liable, we need not address the trial court's conclusion that the seniority system was bona fide and thus shielded by 42 U.S.C. § 2000e–2(h). *International Brotherhood of Teamsters v. United States, supra.* The Fifth Circuit has recently held that a labor union is not liable for the effects of a seniority system if it has met the "legal requirement of taking every reasonable step to oppose a seniority system which operated primarily to discriminate against its own members." *Terrell v. United States Pipe and Foundry Co.,* 644 F.2d 1112, 1121 (5th Cir. 1981).

*Terrell*, although distinguishable in several aspects from the instant case, controls here. In *Terrell*, the steelworkers' local was predominately black. The history of labor-management relations in the plant there involved was one of struggles between management, the steelworkers, and the white-dominated craft unions. At each negotiation session, the steelworkers fought for plant-wide seniority, opposed by the craft unions who won each encounter. In that circumstance, the steelworkers were not held liable for the offensive seniority system. Here, the steelworkers' local was not controlled by blacks. Yet, the district judge found that the local had pressed the company for the changes in the seniority system which plaintiffs now contend should have been made. This finding is amply supported in the record through testimony of union and company negotiators and one of the plaintiffs. The union minutes reveal that in 1962 the membership voted to pursue its demand for plant seniority. Thus, this union is distinguishable from that condemned in *Carey v. Greyhound Bus Co., Inc.,* 500 F.2d 1372 (5th Cir. 1974), which made no "concerted attempt" to rectify discriminatory practices nor "actively sought" plant seniority.

The appellants point out that the local refused to strike over the seniority system. *Terrell* requires taking all reasonable steps. A strike is a drastic measure. Requiring such action could contravene the policies of the National Labor Relations Act and could be unreasonable. *See Thornton v. East Texas Motor Freight,* 497 F.2d 416, 426 (6th Cir. 1974). The union in *Terrell* did not strike, but settled for what it could get in light of craft union opposition. The trial judge properly found for the local on this issue in this case.

As for the International, there was substantial, unrebutted evidence in the record supporting the district court's conclusion that the international had a "well-documented role . . . as an active and persistent protagonist for extended job opportunities for black employees, including repeated support for broadening of seniority rights

to overcome the effects of past discrimination by employers." In *Terrell*, this court reversed the district court's refusal to find that the Steelworkers bore no responsibility for the discriminatory seniority system. There we noted that the United Steelworkers of America "has a well-known history of striving to achieve racial equality and integration in the labor movement." 644 F.2d at 1114.

The district judge's summary judgment on behalf of the International and his judgment for the local after submission of the case to him are

AFFIRMED.